Scott *v.* County Board of Education of Saline County.

Opinion delivered October 20, 1930.

*John D. Shackleford,* for appellant.

*Ernest Briner* and *W. A. Utley,* for appellee.

BUTLER, J. The county board of education of Saline County by its order consolidated a number of school districts into a special school district known as Collegeville Special School District No. 31. Complaint was made regarding the alleged arbitrary conduct of the board in its proceedings, but no appeal was taken from its order of consolidation. Thereafter appellants, A. A. Scott *et al.,* residents of former school districts Nos. 3, 49 and 62, which districts had been consolidated and formed into the special school district aforesaid, filed their petition praying that the consolidated school district be dissolved, and that districts Nos. 3, 49 and 62 be restored to their status as before the order of consolidation had been made.

The county board denied the prayer of the petition, and an appeal was taken to the circuit court where the action of the county board was sustained. From this last order this appeal is prosecuted.

It is insisted by the appellants that the county board of education was obligated by law to dissolve the district upon the presentation of a petition signed by a majority of the qualified electors residing within the district, and that the county board had no discretionary power to refuse to grant the petition. By act No. 234 of the Acts of 1919 the county board of education was created, and by § 4 of that act was clothed with the powers relating to schools and school affairs theretofore residing in the county court. That court had been empowered by act No. 66 of the Acts of 1895 with power to dissolve any school district when a majority of the electors residing in the same should petition the court so to do. Section 1 of said act granting this power providing as follows: "The county courts of this State shall have power to dissolve any school district now established or which may hereafter be established in its county and attach the

territory thereof in whole or in part to an adjoining district or districts, whenever a majority of the electors residing in such district shall petition the court. so to do." This court, in determining the powers of the county court, held that there was a discretion vested in the court to be exercised for the best interests of the citizens of the district to be affected, although that discretion was not in express terms given in the statute. *Hughes* v. *Special School District,* 135 Ark. 454, 205 S. W. 824.

Section 4 of act No. 234 of the Acts of 1919 provides: "That the county board of education shall have direction and supervision of the public schools of the county, unless otherwise provided by law, in their respective counties. The county board shall also have all the powers and discharge all duties pertaining to the schools, school affairs, and school revenues of the county, heretofore imposed upon the county judge, such as the following: Apportion all school funds as provided by law and in conformity to the regulations of the State Board of Education; form local school districts; change district boundary lines; transfer children; dissolve upon petition local school districts, where conditions and the best interests of the children demand; transfer funds and attach territory which is in no school district to the proper district or districts." It will be noted that in this act a discretion is conferred upon the board by the express terms thereof, namely, that it may discharge certain duties relating to schools among which, power is given "to dissolve upon petition local school districts where conditions and best interests of the children demand." So, by the authority of *Hughes* v. *School District, supra,* and the express terms of the statute, we are of the opinion that a discretion was vested in the court to be reasonably exercised in the granting or refusing to grant petitions for the dissolution of the district, and it might refuse to dissolve any district, even though a majority of the qualified electors therein might petition therefor, where it appeared to the board that the condi-

tions and best interests of the children demanded such action.

When this cause was heard on appeal in the circuit court, several witnesses were introduced who testified that school facilities were better in the district as consolidated than in districts Nos. 3, 49 and 62 before consolidation; that there was a much better average attendance from those districts than before, and that the roads were good and the means of transportation adequate, and that it was for the best interests of the children that the consolidated district be not dissolved. There was no testimony to the contrary. Therefore, assuming that the petition contained a majority of the qualified electors in the districts, there is no showing that the action of the board in denying their prayers was arbitrary, but appears to us to be a reasonable exercise of the discretion vested in it by law.

The petition containing a majority of the qualified electors was necessary to give the board jurisdiction, and an examination of the evidence adduced on the trial of the case in the court below discloses the fact that there was *no* majority. Dr. W. W. Ward, one of the witnesses for the appellant, testified that there were sixty-seven persons in the territory affected who were qualified electors and who did not sign the petition, and that the petition was signed by seventy-two other persons qualified under the law to sign such petitions, thus making a majority. This is all the testimony as to the number of qualified electors who lived within the district, but of the seventy-two who signed the petition the uncontradicted testimony of a number of witnesses discloses the fact that a considerable number of the persons who signed the petition were not qualified electors of the district. Several signed who had transferred their children and taxes to, but who themselves did not reside within the district. These were not qualified electors. *Jones* v. *Floyd*, 129 Ark. 185, 195 S. W. 360. Two had been convicted of felonies, and their citizenship not restored. One

476

whose name appeared on the petition did not sign it himself nor authorize any one to sign it for him. Altogether it was shown that of those signing the petition there was a number who were not qualified electors sufficient to reduce the number of qualified electors below a majority. Also, it may be said that the persons circulating the petition did not testify, nor was there any showing made that the purported names were the genuine signatures of those persons, and without such showing there was no duty resting upon the board to consider the petition.

"The court properly eliminated from its consideration a petition that was circulated by one Ross Hughes, because there was no competent testimony that the names thereon were genuine signatures of electors residing within the district." *Hughes* v. *Special School District, supra,* quoting page 458. Therefore, in any view of the case, the judgment of the trial court was correct, and it is affirmed.